Harold Fertig, J.
This action for loss of rent as a result of a breach of lease was tried before this court without a jury on November 25, 1969.
The basis for the cause of action is a lease entered into on or about January 6, 1961 between the plaintiff corporation and the defendant,. Kent Leasing Co. Inc. That lease provided for a term of five years commencing on May 1, 1961 at a monthly rental of $145. On June 25, 1962 the defendant, Kent Leasing Co. Inc. notified the plaintiff that it was closing the premises on July 3, 1962. On that date the tenant removed from the premises and has paid no rent since. On March 5,1963 the aforesaid premises were rerented by the landlord for a term of two years and eight months to commence on May 1,1963 for a rental of $125 a month from May 1, 1963 until April 30, 1964; $150 a month from May 1, 1964 until December 31, 1964, and $175 per month from January 1,1965 to December 31,1965, with an option to the tenant to renew the lease for 1966 and 1967 at $175 per month.
Accordingly, plaintiff brings this action for the difference between the rental under its lease with the defendant, Kent Leasing and the actual rent received for the months ensuing during the balance of the term. In addition, plaintiff claims that Kent Dry Cleaners Inc. was the true party to the agreement, and, in effect, seeks to pierce thé corporate veil of Kent Leasing Co. Inc. and to. hold Kent Dry Cleaners Inc. liable for its damages.
The defendants, in addition to denying the allegations of the complaint, allege by way of an affirmative defense a “ surrender and acceptance,” and further that the defendant, Kent Dry Cleaners Inc. was a separate entity and not a party to the agreement. The defendants also allege the Statute of Limitations, pointing out that the action was commenced by the service of a summons and complaint on the 22nd day of October, 1968.
*889 The claim against Kent Dry Cleaners Inc. made by the plaintiff in an effort to pierce the corporate veil was based upon a series of circumstances. Namely, the stockholders were the same for both corporations; the leasing company had no assets of its own; and the operations of both companies were so intermingled as to give them no independent identities.
Where a corporation is so dominated and the interference with its activities so obtrusive that when there is an attempted separation between the parent and the subsidiary, such attempt will work a fraud upon the law, by the general rules of agency the parent company might be considered the principal and the subsidiary the agent (Berkey v. Third Ave, Ry. Co., 244 N. Y. 84), However, in this case not only was not Kent Leasing Co. Inc. a subsidiary of Kent Dry Cleaners Inc., but there was one additional factor which must be present and was not. The leasing company did nothing to mislead or misrepresent its own condition. In Berkey (supra) the action was in negligence, not contract.
‘ ‘ A corporation is viewed as an entity separate from its stockholders if ‘ no rule of common sense or common justice is thereby violated ’ and ‘ no wrong or fraud is shielded by corporate charter ’ ” (Helenic Lines Ltd. v. Winkler, 249 F. Supp. 771, 776). The plaintiff was neither misled nor overreached. Kent Dry Cleaners Inc. was originally the tenant and the landlord was told prior to the signing of this lease that the new lease would be executed by Kent Leasing Co. Inc. and that that corporation had no assets.
Soviero v. Franklin Nat. Bank (328 F. 2d 446), cited by the plaintiff, involved a bankrupt that conveyed its only asset, a parcel of real property, to an affiliate corporation without consideration, and in so doing intended to thwart its creditors.
“ The use of straw men, corporate or individual, is a practice long known to the law and a seller who without inquiry accepts a corporate purchaser with whom he could, absent the guarantee of a person or corporation of substance, have refused contract, cannot claim to have been defrauded if the corporate purchaser has no substance ”. (Sloan Foundation v. Atlas, 42 Misc 2d 603, 606; Wagner v. Manufacturers Trust Co., 237 App. Div. 175, affd. 261 N. Y. 699.)
The plaintiff in accepting Kent Leasing Co. Inc. as the tenant knew its purpose, and the fact that it had no assets and accepted that corporation as the sole contracting party. Its position now results not from any act on the part of the defendants in concealing the purpose of the corporate tenant but rather from its own deliberate and perhaps unthinking act in accepting that *890 shell of a corporation as its tenant (Sloan Foundation v. Atlas, supra). Therefore, the cause of action against Kent Dry Cleaners Inc. is dismissed.
The affirmative defense of the defendants, that there was a surrender and acceptance, is without substance, and the mere fact that premises vacated by a tenant were relet even at a higher rental is not a reason for making such a determination. (Building Supervision Corp. v. Skolinsky, 50 Misc 2d 375.) Upon receipt of a notice that the defendant leasing company was about to vacate the premises, the plaintiff notified the tenant that the landlord expected to be paid for the balance of the term and was holding the tenant liable therefor. In addition, landlord rerented the premises in order to mitigate damages,
The tenant vacated the premises in July of 1962, and the action was commenced in October of 1968. The question then before the court is when the Statute of Limitations commenced to run. Unless the agreement between the parties states otherwise, the liability for damages resulting from the reletting is single and entire and not multiple and several (Hermitage Co. v. Levine, 248 N. Y. 333, 338). However, a normal installment contract, providing for each installment to be paid individually, would require that the Statute of Limitations run from each installment as that installment becomes due (Newgold v. Woodstock Development Corp., 26 A D 2d 142, revd. on other grounds, 19 N Y 2d 894; McCready v. Lindenborn, 172 N. Y. 400). Should the lease be written in such a way that the reletting was a single and entire liability, the damage resulting would also be single and entire. In such event the statute runs from the time of the breach, which in this case was July, 1962, and would have been a complete defense to the cause of action; also in such event the entire surplus collected during the period would have been applicable to the entire loss sustained (Fields Holding Co. v. Chambrook Realty Co., 146 Misc. 306).
However, “ a damage clause can be drawn in such a way as to make a tenant responsible for monthly deficits after the re-entry of his landlord, and this without charging the landlord with a duty to account for a surplus in other seasons.” (Hermitage Co. v. Levine, supra, p. 337).
In this case the lease in question (par. 23rd) provided that, in the event of a default and the landlord would re-enter the premises, the damages which the landlord might receive would be ‘ ‘ the difference between the rent reserved and the rent collected and received, if any, by the landlord during the remainder of the unexpired term; such difference or deficiency between the rent herein reserved and the rent collected if any, shall become *891 due and payable in monthly payments during the remainder of the unexpired term, as the amounts of such difference or deficiency shall from time to timé be ascertained It is obvious then that it was the intention of the parties that the landlord would have a separate cause of action for each month’s rent as it'became due (McCready v. Lindenborn, supra).
Accordingly, plaintiff shall have judgment against the defendant Kent Leasing Co. Inc. in the sum of $1,110 for the loss of rent. Said judgment to be with costs and interest on $145 from November 1, 1962; interest on $145 from December 1, 1962; interest on $145 from January 1, 1963; interest on $145 from February 1, 1963; interest on $145 from March 1, 1963; interest on $145 from April 1, 1963; interest on $20 from May 1, 1963; interest on $20 from June 1, 1963; interest on $20 from July 1, 1963; interest on $20 from August 1, 1963; interest on $20 from September 1,1963; interest on $20 from October 1,1963; interest on $20 from November 1, 1963; interest on $20 from December 1, 1963; interest on $20 from January 1, 1964; interest on $20 from February 1,1964; interest on $20 from March 1, 1964; and interest on $20 from April 1, 1964.
The claim by the plaintiff for the repair damages is dismissed as being barred by the Statute of Limitations.